1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                   SAN JOSE DIVISION

11

12   DAVID WAYNE STUTES,                | Case No. 14-CV-02016-LHK

13              Plaintiff,               | **ORDER GRANTING IN PART AND**
                                         | **DENYING IN PART DEFENDANTS'**
14        v.                             | **MOTION FOR SUMMARY JUDGMENT**

15   J. PARRISH, et al.,                 | Re: Dkt. No. 64

16              Defendants.

17

18        Plaintiff David Stutes ("Plaintiff") brings this action under 42 U.S.C. § 1983 against

19   Defendants Santa Clara County Sheriff's Deputies Jessica Parrish ("Parrish"), Shannon Catalano,

20   Michael Leslie, and Eric Barton (collectively, the "Defendant Deputies"), and the County of Santa

21   Clara (collectively, "Defendants").  Before the Court is Defendants' motion for summary

22   judgment.  ECF No. 64.  The Court finds this matter appropriate for determination without oral

23   argument and VACATES the hearing set for December 17, 2015.  *See* Civil L.R. 7-1(b).  The

24   Case Management Conference set for December 17, 2015 remains as scheduled.  Having

25   considered the submissions of the parties, the relevant law, and the record in this case, the Court

26   hereby GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

27                                        1

I.      **BACKGROUND**

   A. **Factual Background**

   Throughout this Order, the Court relies on facts that are not disputed by either party unless specified otherwise. The Court also does not rely upon Plaintiff's exhibits to which Defendants have objected. Thus, the Court denies Defendants' evidentiary objections as moot.

   In June 2013, Plaintiff was in a romantic relationship with Maggie Guild ("Guild"). ECF No. 2 ¶ 10. On the evening of June 22, 2013, several Santa Clara Sheriff's Deputies who are not parties to the instant litigation came to Plaintiff's residence to perform a welfare check on Guild in response to a call to the police from Guild's friend. *Id.*; ECF No. 65-2 at 3, 6. Guild and Plaintiff were both present at Plaintiff's residence when the deputies arrived. ECF No. 2 ¶ 10; ECF No. 65-2 at 6. Guild left Plaintiff's residence when the deputies came for the welfare check on June 22, but did not report to the deputies that Plaintiff had hit her. ECF No. 2 ¶ 10; ECF No. 65-2 at 3, 6.

   The next day, Guild made a report of domestic violence to Parrish. ECF No. 2 ¶¶ 11-12; ECF No. 65 ¶ 7. Guild told Parrish that she had been dating Plaintiff for about eight months, that she lived with Plaintiff and his son at Plaintiff's residence, and that Plaintiff had been physically and verbally abusive to Guild throughout their relationship. ECF No. 65 ¶ 9. Guild reported to Parrish that on June 22, Guild and Plaintiff had argued and Plaintiff had "pushed her so hard she nearly fell over." *Id.* ¶ 11. Parrish observed bruises on Guild's arms, buttocks, and thighs. *Id.* ¶ 16. Throughout the interview with Parrish, Guild was "visibly upset, she was shaking and crying at times and appeared in fear for her own safety." *Id.* ¶ 17.

   After speaking with Guild, Parrish and the other Defendant Deputies went together to Plaintiff's residence. ECF No. 65 ¶ 18; ECF No. 2 ¶ 13. Plaintiff spoke to Parrish outside Plaintiff's residence. ECF No. 65 ¶¶ 18-19; ECF No. 73 at 5. Plaintiff denied ever hitting Guild. ECF No. 65 ¶ 20. Parrish states in her declaration that, following Parrish's interview of Plaintiff, Parrish concluded that she had probable cause to arrest Plaintiff for felony domestic violence "[b]ased on Guild's statement, her visible injuries, her demeanor, [Plaintiff's] responses, official department policy and [Parrish's] experience and training." ECF No. 65 ¶ 23. Parrish proceeded

2

United States District Court
Northern District of California

1    to arrest Plaintiff.  ECF No. 73 at 5; ECF No. 65 ¶ 23.

2           Parrish knew from her interview with Guild that Plaintiff possessed a number of firearms.

3    ECF No. 65 ¶ 22.  Parrish states that Plaintiff consented to have the Defendant Deputies enter

4    Plaintiff's residence and seize Plaintiff's firearms.  *Id.*  However, Plaintiff states that he did not

5    consent to the search and seizure, but that instead Plaintiff explicitly told the Defendant Deputies

6    that they did not have permission to enter Plaintiff's residence.  ECF No. 68-8 at 116:8-15.  The

7    Defendant Deputies seized several firearms from Plaintiff's residence.  ECF No. 2 ¶ 15; ECF No.

8    65 ¶ 22.

9           At Guild's request, Parrish obtained an emergency protective order ("EPRO").  ECF No.

10   65 ¶ 17; ECF No. 65-3.  Among other restrictions, the EPRO prohibited Plaintiff from owning or

11   possessing firearms or ammunition.  Specifically, the EPRO stated:

12           YOU ARE PROHIBITED FROM OWNING, POSSESSING, PURCHASING, RECEIVING, OR ATTEMPTING TO PURCHASE OR RECEIVE A FIREARM OR AMMUNITION. . . . WITHIN 24 HOURS OF RECEIPT OF THIS ORDER, YOU MUST TURN IN YOUR FIREARMS TO A LAW ENFORCEMENT AGENCY, SELL THEM TO A LICENSED FIREARMS DEALER, OR STORE THEM WITH A LICENSED FIREARMS DEALER UNTIL THE EXPIRATION OF THIS ORDER.

17   ECF No. 65-3 at 2.

18          Parrish states that she served Plaintiff with the EPRO at approximately the same time that

19   Parrish arrested Plaintiff.  ECF No. 65 ¶ 23; ECF No. 65-2 at 8.  Plaintiff states that he was not

20   given the EPRO when he was arrested.  ECF No. 68-9 at 122:14-15.  Although the sequence of

21   events is unclear from the record, Parrish's incident report describes the search and seizure, then

22   describes Plaintiff's arrest, then describes obtaining and serving the EPRO.  ECF No. 65-2 at 8.

23   However, Parrish's declaration in support of the motion for summary judgment describes

24   obtaining the EPRO, then the search and seizure, then placing Plaintiff under arrest and serving

25   him with the EPRO.  ECF No. 65.  However, Plaintiff stated in his deposition that he received the

26   EPRO at the jail following his arrest.  ECF No. 68-9 at 122:14-15.  Plaintiff does not comment

27

28   Case No. 14-CV-02016-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

upon when the EPRO was obtained or when the search and seizure occurred relative to his arrest.

Plaintiff was subsequently charged with two counts of misdemeanor battery on a cohabitant.  ECF No. 2 ¶ 16; ECF No. 64 at 5.  The case proceeded to a jury trial, and Plaintiff was acquitted of both counts.  ECF No. 2 ¶ 17; ECF No. 64 at 5.

### B.  Procedural History

Plaintiff, proceeding pro se, filed his complaint on May 1, 2014.  ECF No. 2.  Defendants filed their answer on July 10, 2014.  ECF No. 17.  The case was reassigned to the undersigned judge on August 5, 2014.  ECF No. 24.

Defendants filed the instant motion for summary judgment on October 15, 2015.  ECF No. 64.  Plaintiff filed a response on November 19, 2015.  ECF No. 73.  Defendants filed a reply on November 25, 2015.  ECF No. 79.

## II.    LEGAL STANDARD

Summary judgment is appropriate if, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party, there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).  At the summary judgment stage, the Court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."  *House v. Bell*, 547 U.S. 518, 559-60 (2006).  A fact is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable trier of fact to decide in favor of the nonmoving party, *id.*  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id.* (citations omitted).

The moving party bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial,

United States District Court
Northern District of California

Case No. 14-CV-02016-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party, but on an issue for which the opposing party will have the burden of proof at trial, the party moving for summary judgment need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325; *accord Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Once the moving party meets its initial burden, the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250.

The Court has an obligation to give liberal construction to the filings of pro se litigants. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (noting that the Ninth Circuit has a "policy of liberal construction in favor of pro se litigants"). However, at the summary judgment stage, the Court "does not have a duty to search for evidence that would create a factual dispute" because the Court "lacks the power to act as a party's lawyer, even for *pro se* litigants." *Bias v. Moynihan*, 508 F.3d 1212, 1219 (9th Cir. 2007).

## III.   DISCUSSION

Plaintiff's complaint states two causes of action under 42 U.S.C. § 1983. The first cause of action alleges that the Defendant Deputies violated Plaintiff's Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendment rights. The second cause of action alleges that the County of Santa Clara (the "County") was deliberately indifferent to a pattern and practice by County deputies of performing illegal searches, seizures, and arrests.

The basis for all of the alleged violations of Plaintiff's constitutional rights is that the Defendant Deputies allegedly arrested Plaintiff without probable cause and then performed an unlawful search of Plaintiff's residence that resulted in the unlawful seizure of Plaintiff's firearms. These allegations fall squarely within the protection of the Fourth Amendment, so they are properly analyzed only as Fourth Amendment violations. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (claims under 42 U.S.C. § 1983 alleging violations of the Fourth Amendment must be analyzed solely under the Fourth Amendment). Plaintiff does not contest the characterization

5

of his claims as solely Fourth Amendment violations.  *See generally* ECF No. 73.

Liberally construing Plaintiff's complaint, the Court therefore interprets Plaintiff as making the following claims: (1) a claim under § 1983 against the Defendant Deputies for unlawful arrest, in violation of the Fourth Amendment; (2) a claim under § 1983 against the Defendant Deputies for unlawful search and seizure, in violation of the Fourth Amendment; and (3) a claim under § 1983 against the County for deliberate indifference to the constitutional violations committed by the Defendant Deputies.  Defendants have moved to dismiss each of these claims, and the Court addresses each of these claims in turn.

**A.  Unlawful Arrest**

Defendants argue that summary judgment should be granted for Defendants on Plaintiff's claim of unlawful arrest because the undisputed evidence shows that the Defendant Deputies had probable cause to arrest Plaintiff.  Defendants additionally argue that summary judgment is appropriate based on qualified immunity because no clearly established law provides that the evidence available to the Defendant Deputies did not constitute probable cause.  Plaintiff argues that summary judgment is inappropriate because the Defendant Deputies lacked probable cause.

"The absence of probable cause is a necessary element of § 1983 false arrest and malicious prosecution claims."  *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015). "[P]robable cause requires only that those 'facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense.'"  *Id.* (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)).  Although an officer may not ignore exculpatory evidence that would negate a finding of probable cause, *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003), the officer may assess the credibility of evidence when determining whether to arrest a suspect.  *Yousefian*, 779 F.3d at 1014.  Thus, the Ninth Circuit has held that a suspect's exculpatory statements to the arresting officer do not defeat probable cause.  *Id.*  Additionally, once probable cause to arrest someone is established, a law enforcement officer is not "required by the Constitution to investigate independently every claim

6

of innocence." *Broam*, 320 F.3d at 1032.  Furthermore, "probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt." *Id.*

In this case, the Defendant Deputies arrested Plaintiff for violation of California Penal Code § 273.5, which makes it a felony to "willfully inflict[] corporal injury resulting in a traumatic condition upon . . . someone with whom the offender has, or previously had, an engagement or dating relationship."  "Bruising is a 'traumatic condition' for purposes of [Cal. Penal Code § 273.5]." *United States v. Hall*, 419 F.3d 980, 986 (9th Cir. 2005).

There is undisputed evidence in this case that the Defendant Deputies knew that Guild and Plaintiff had been in a dating relationship, ECF No. 72 ¶ 3, that Guild had bruises on her arms, buttocks, and thighs, ECF No. 65 ¶ 16, that Guild told Parrish that Plaintiff had physically assaulted Guild, *id.* ¶¶ 10-11, and that Guild was visibly upset and appeared in fear for her safety during Guild's interview with Parrish, ECF No. 65 ¶ 17.  These facts and circumstances, all within the knowledge of the Defendant Deputies, were sufficient for a prudent person to believe that Plaintiff had willfully hit Guild causing bruising, in violation of California Penal Code § 273.5. Therefore, the Defendant Deputies had probable cause to arrest Plaintiff.  *See Barry*, 902 F.2d at 773 (holding that probable cause requires that the "facts and circumstances within the officer's knowledge are sufficient to warrant a prudent person to believe that the suspect has committed . . . an offense").

Additionally, there is undisputed evidence that Parrish spoke with Plaintiff prior to arresting him, and that Parrish documented her interview with Plaintiff, including the fact that Plaintiff denied hitting Guild, as part of Parrish's incident report.  ECF No. 65 ¶ 19; ECF No. 65-3 at 7-8; ECF No. 73 at 4.  Parrish thus did not ignore Plaintiff's exculpatory statements.  *See Yousefian*, 779 F.3d at 1014 (holding that arresting officer did not ignore suspect's exculpatory statements because the arresting officer documented the exculpatory statements in the officer's report).  Rather, Parrish took Plaintiff's statements into account when Parrish concluded that she

Case No. 14-CV-02016-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

had probable cause to arrest Plaintiff.  ECF No. 65 ¶ 23.

Plaintiff does not point to any evidence in the record to contradict any of the above facts. ECF No. 73 at 4-6.  Instead, Plaintiff argues that the Defendant Deputies lacked probable cause because the Defendant Deputies should have conducted a more thorough investigation prior to arresting Plaintiff.  *Id.*  Plaintiff argues that the Defendant Deputies should have spoken to the deputies who performed the welfare check on June 22, Plaintiff's neighbor, and Plaintiff's son.  *Id.* However, once probable cause to arrest Plaintiff was established, the Defendant Deputies were not "required by the Constitution to investigate independently every claim of innocence." *Broam*, 320 F.3d at 1032.

Plaintiff additionally argues that Plaintiff's acquittal following a jury trial shows that the Defendant Deputies lacked probable cause to arrest Plaintiff.  ECF No. 73 at 6.  However, "probable cause can well exist (and often does) even though ultimately, a jury is not persuaded that there is proof beyond a reasonable doubt."  *Broam*, 320 F.3d at 1032.

Plaintiff further argues that Parrish, Guild, and Guild's friend "were in collaboration to defraud Mr. Stutes."  ECF No. 73 at 6.  Plaintiff does not point to any evidence in the record of any such collaboration.  Moreover, Plaintiff's assertion in his declaration that Plaintiff believes Parrish, Guild, and Guild's friend have a personal relationship is insufficient to survive summary judgment.  *See Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011) ("To survive summary judgment, a plaintiff must set forth non-speculative evidence of specific facts, not sweeping conclusory allegations.").

Because the undisputed evidence shows that the Defendant Deputies had probable cause to arrest Plaintiff, Plaintiff's arrest was not a Fourth Amendment violation.  Therefore, the Court GRANTS Defendants' motion for summary judgment as to Plaintiff's claim for unlawful arrest against the Defendant Deputies.

## B. Unlawful Search and Seizure

Defendants additionally argue that they are entitled to summary judgment on Plaintiff's

United States District Court
Northern District of California

claim that the Defendant Deputies unlawfully searched Plaintiff's residence and seized Plaintiff's firearms.  Defendants concede that there is a dispute over whether Plaintiff provided consent to the Defendant Deputies to enter Plaintiff's residence and seize Plaintiff's firearms.  ECF No. 64 at 14. Nevertheless, Defendants argue that any constitutional violation was *de minimis* because it did not meaningfully interfere with Plaintiff's possession of the firearms and that the alleged constitutional violation therefore cannot constitute a § 1983 cause of action.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated." "Warrantless searches of the home or the curtilage surrounding the home are 'presumptively unreasonable.'" *Sandoval v. Las Vegas Metropolitan Police Dep't*, 756 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Payton v. New York*, 445 U.S. 573, 586 (1980)).  "To make lawful entry into a home in the absence of a warrant, officers must have either probable cause and exigent circumstances or an emergency sufficient to justify the entry."  *Id.*  Additionally, a "seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property."  *United States v. Jacobsen*, 466 U.S. 109, 113 (1984).  However, the U.S. Supreme Court has held that a *de minimis* interference with a protected property interest, such as the destruction of "only a trace amount of material . . . the loss of which appears to have gone unnoticed," does not amount to an unreasonable seizure.  *Id.* at 125-26.  The U.S. Supreme Court has likewise found that an examination of the exterior of an automobile's tires and taking of paint scrapings from the exterior of the vehicle was a *de minimis* interference that did not amount to a Fourth Amendment violation.  *Id.* (citing *Cardwell v. Lewis*, 417 U.S. 583, 591-92 (1974)).

In this case, Defendants argue that the Defendant Deputies' search of Plaintiff's home and seizure of Plaintiff's firearms was *de minimis* because the EPRO required Plaintiff to surrender his firearms, ECF No. 65-3 at 2, and Plaintiff conceded at his deposition that Plaintiff would have complied with the terms of the EPRO, ECF No. 68-9 at 123:5-10.  Defendants argue that because Plaintiff would have surrendered his firearms pursuant to the EPRO even if the firearms had not

9

United States District Court
Northern District of California

1    been seized, the Defendant Deputies cannot have meaningfully interfered with Plaintiff's

2    possession of the firearms by seizing them without a warrant.  ECF No. 64 at 14.

3        The Court need not reach Defendants' argument that any constitutional violation resulting

4    from the allegedly unlawful search and seizure was *de minimis* because Defendants' *de minimis*

5    argument depends upon Plaintiff having been served with the EPRO in advance of the search and

6    seizure.  Defendants' own evidence is unclear with regard to when the Defendant Deputies

7    obtained the EPRO and whether the Defendant Deputies served the EPRO upon Plaintiff before

8    the search and seizure of Plaintiff's firearms.  *Compare* ECF No. 65 ¶ 17 (Parrish's declaration

9    describes obtaining the EPRO before describing the search and seizure of Plaintiff's firearms),

10   *with* ECF No. 65-2 at 8 (Parrish's incident report describes obtaining the EPRO after describing

11   the search and seizure of Plaintiff's firearms).  Indeed, there is evidence in the record that the

12   Defendant Deputies did not call to obtain the EPRO until after the Defendant Deputies had already

13   seized Plaintiff's firearms.  *See* ECF No. 65-2 at 8 (Parrish's incident report describes calling to

14   obtain the EPRO after describing the search and seizure of Plaintiff's firearms).

15       Additionally, Plaintiff stated at his deposition that he had not yet been served with the

16   EPRO at the time the Defendant Deputies entered his home and seized his firearms.  ECF No. 68-

17   9 at 122:11-15.  Thus, there is evidence in the record that at the time the Defendant Deputies

18   seized Plaintiff's firearms, the Defendant Deputies had neither obtained nor served Plaintiff with

19   the EPRO.  If, at the time of the search and seizure, the EPRO had been neither issued to the

20   Defendant Deputies nor obtained by Plaintiff, Plaintiff did not yet have to comply with the

21   firearms restriction of the EPRO.  *See* ECF No. 65-3 (the EPRO, giving Plaintiff 24 hours from

22   receipt of the EPRO to surrender firearms).

23       Viewing the evidence in the light most favorable to the non-moving party, as the Court

24   must on a motion for summary judgment, *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir.

25   2002), Plaintiff did not consent to the search and seizure and was not served with the EPRO prior

26   to the search and seizure.  Thus, Plaintiff retained his possessory interest in the firearms when the

27

28

10

1    Defendant Deputies entered his residence and seized Plaintiff's firearms.  By allegedly entering

2    Plaintiff's residence and seizing Plaintiff's firearms without Plaintiff's consent and without

3    serving the EPRO, the Defendant Deputies's argument that the constitutional violation resulting

4    from the allegedly unlawful search and seizure was *de minimis* fails.  *See Jacobsen*, 466 U.S. at

5    113 (for Fourth Amendment purposes, a "seizure of property occurs when there is some

6    meaningful interference with an individual's possessory interests in that property").

7         The Court therefore DENIES Defendants' motion for summary judgment as to Plaintiff's

8    claim that the Defendant Deputies unlawfully searched Plaintiff's home and unlawfully seized

9    Plaintiff's firearms.

10   **C.  County Liability**

11        Plaintiff's final cause of action is a claim under § 1983 against the County for deliberate

12   indifference to the constitutional violations committed by the Defendant Deputies.  Because the

13   Court has already concluded that Defendants are entitled to summary judgment on Plaintiff's

14   claim of unlawful arrest against the Defendant Deputies because Plaintiff has not produced

15   evidence that his arrest was unconstitutional, Defendants are likewise entitled to summary

16   judgment on Plaintiff's claim against the County for unlawful arrest.  The Court turns now to

17   discuss whether Defendants are entitled to summary judgment on Plaintiff's claim against the

18   County for unlawful search and seizure.

19        Local governments such as the County may be sued directly under § 1983.  *Monell v.*

20   *Dep't Soc. Servs. of N.Y.C.*, 436 U.S. 658, 689 (1978).  A plaintiff can establish local government

21   liability by showing either (1) that "the municipality acted with the state of mind required to prove

22   the underlying violation" or (2) that "through its *omissions* the municipality is responsible for a

23   constitutional violation committed by one of its employees."  *Gibson v. County of Washoe, Nev.*,

24   290 F.3d 1175, 1185-86 (9th Cir. 2002).

25        Defendants argue that Plaintiff in the instant case cannot show that the County had the

26   state of mind to commit the alleged Fourth Amendment violation against Plaintiff nor that the

27

28   Case No. 14-CV-02016-LHK
     ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
     JUDGMENT

11

United States District Court
Northern District of California

United States District Court
Northern District of California

1   County should be liable through its omissions for the Defendant Deputies' commission of the

2   alleged Fourth Amendment violation.  The Court discusses first whether Plaintiff has produced

3   evidence that the County acted with the requisite state of mind to commit a Fourth Amendment

4   violation and second whether Plaintiff has produced evidence that the County should be liable

5   through its omissions for the constitutional violations allegedly committed by the Defendant

6   Deputies.

7        First, as to whether the County acted with the state of mind to commit a Fourth

8   Amendment violation, a plaintiff can establish that the local government acted with the state of

9   mind required to prove the underlying violation in one of the following three ways.

10       "First, the plaintiff may prove that a city employee committed the alleged constitutional

11  violation pursuant to a formal government policy or a longstanding practice or custom which

12  constitutes the standard operating procedure of the local governmental entity."  *Gillette v.*

13  *Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992) (citing *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S.

14  701, 737 (1989); *Monell*, 436 U.S. at 690-91).

15       "Second, the plaintiff may establish that the individual who committed the constitutional

16  tort was an official with final policy-making authority and that the challenged action itself thus

17  constituted an act of official governmental policy."  *Id.* (citing *Pembaur v. City of Cincinnati*, 475

18  U.S. 469, 480-81 (1986); *McKinley v. City of Eloy*, 705 F.2d 1110, 1116 (9th Cir. 1983)).

19       "Third, the plaintiff may prove that an official with final policy-making authority ratified a

20  subordinate's unconstitutional decision or action and the basis for it."  *Id.* (citing *City of St. Louis*

21  *v. Praprotnik*, 485 U.S. 112, 123-24 (1988); *Hammond v. Cnty. of Madera*, 859 F.2d 797, 801-02

22  (9th Cir. 1988), *abrogation on other grounds recognized by L.W. v. Grubbs*, 92 F.3d 894, 897 (9th

23  Cir. 1996)).

24       The second and third methods of establishing that the County acted with the requisite state

25  of mind require Plaintiff to establish either that "the individual who committed the constitutional

26  tort was an official with final policy-making authority" or that "an official with final policy-

27

28  Case No. 14-CV-02016-LHK
    ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
    JUDGMENT

United States District Court
Northern District of California

1  making authority ratified a subordinate's unconstitutional decision or action and the basis for it."

2  *Gillette*, 979 F.2d at 1346.  Plaintiff has not made any allegation nor produced any evidence

3  showing that the alleged unlawful search and seizure were either committed or ratified by a

4  County official with final policy-making authority, as required for the second and third methods of

5  establishing state-of-mind liability.  *See* ECF No. 2 ¶¶ 26-28 (cause of action against the County,

6  alleging only deliberate indifference and inadequate policies without identifying an official with

7  final policy-making authority); ECF No. 73 at 12 (Plaintiff's response brief, discussing *Monell*

8  liability without identifying an official with final policy-making authority).  Therefore, Plaintiff

9  has not satisfied either the second or third methods of showing the County had the requisite state

10  of mind.  *Gillette*, 979 F.2d at 1346.

11      The only remaining avenue for Plaintiff to prove the County had the requisite state of mind

12  to commit a Fourth Amendment violation is to show that the Defendant Deputies "committed the

13  alleged constitutional violation pursuant to a formal government policy or a longstanding practice

14  or custom which constitutes the standard operating procedure of the local governmental entity."

15  *Gillette*, 979 F.2d at 1346.  In support of Defendants' motion for summary judgment, Defendants

16  attach the County Sheriff's Department's official policy on handling reports of domestic violence,

17  titled General Order 17.09.  ECF No. 65-1.  With regard to the seizure of firearms, General Order

18  17.09 instructs officers to seize firearms consistent with California Penal Code § 12028.5

19  (renumbered as Cal. Penal Code § 18250 on Jan. 12, 2012), *id.* at 6, which authorizes the seizure

20  of firearms at the scene of a domestic violence incident if the firearm is "in plain sight or

21  discovered pursuant to a consensual or other lawful search."  Cal. Penal Code § 18250.  Any such

22  seizure would not be a Fourth Amendment violation.  *See Horton v. California*, 496 U.S. 128, 131

23  (1990) (seizure of evidence of crime in plain view is not a Fourth Amendment violation); *Illinois*

24  *v. Rodriguez*, 497 U.S. 177, 181 (1990) (Fourth Amendment prohibition on warrantless search

25  does not apply when voluntary consent has been obtained).  Defendants therefore have produced

26  evidence that County policy is to conduct seizures of firearms during investigations of domestic

27

28  Case No. 14-CV-02016-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

13

United States District Court
Northern District of California

1  violence only in compliance with the Fourth Amendment.  Thus, Plaintiff has failed to show that

2  the County acted with the state of mind necessary for local government liability.

3          Second, as to whether the County should be liable through its omissions for the Defendant

4  Deputies' alleged constitutional violations, a plaintiff can show that the local government is

5  responsible through its omissions for a constitutional violation committed by one of its employees

6  only by showing "that the municipality's deliberate indifference led to its omission and that the

7  omission caused the employee to commit the constitutional violation."  *Gibson*, 290 F.3d at 1186.

8  "To prove deliberate indifference, the plaintiff must show that the municipality was on actual or

9  constructive notice that its omission would likely result in a constitutional violation."  *Id.*

10         Defendants point to an absence of evidence in the record that the County had notice of any

11 violations of County policy by the Defendant Deputies, let alone that the County was deliberately

12 indifferent to any such violations.  "To prove deliberate indifference, the plaintiff must show that

13 the municipality was on actual or constructive notice that its omission would likely result in a

14 constitutional violation."  *Gibson*, 290 F.3d at 1186.  Because Plaintiff has not produced evidence

15 showing that the County was on notice of unlawful searches and seizures by its deputies, Plaintiff

16 cannot show that the County was deliberately indifferent to those violations.

17         In Plaintiff's response to Defendants' motion for summary judgment, Plaintiff restates the

18 requirements for *Monell* liability.  However, Plaintiff makes no argument for why *Monell* liability

19 is appropriate and points to no evidence in the record that would support finding *Monell* liability

20 in this case.  The Court finds that Plaintiff has not identified "specific facts showing that there is a

21 genuine issue for trial," *Anderson*, 477 U.S. at 250, so summary judgment for Defendants is

22 appropriate on Plaintiff's cause of action for deliberate indifference by the County.  Therefore, the

23 Court GRANTS Defendants' motion for summary judgment as to Plaintiff's claim against the

24 County.

25 **IV.    CONCLUSION**

26         For the foregoing reasons, the Court GRANTS Defendants' motion for summary judgment

27                                                    14

28 Case No. 14-CV-02016-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT

1   as to Plaintiff's claim against the Defendant Deputies for unlawful arrest and as to Plaintiff's claim

2   against the County.  The Court DENIES Defendants' motion for summary judgment as to

3   Plaintiff's claim against the Defendant Deputies for unlawful search and seizure.

4   **IT IS SO ORDERED.**

5

6   Dated: December 15, 2015

7   _Lucy H. Koh_

8   LUCY H. KOH
    United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 14-CV-02016-LHK
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT